**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EUSTACIO GREGORIO-MEZA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FCI FORT DIX,<br><br>Respondent. | No. 26cv2450 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

*Pro se* Petitioner Eustacio Gregorio-Meza, a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP") computation of his federal sentence. D.E. 1 ("Petition" or "Pet."). On May 4, 2026, this Court dismissed the Petition because Petitioner failed to exhaust his administrative remedies and that, in any event, the Petition failed on the merits. D.E. 9 ("Order"). Petitioner now moves for reconsideration of the Order under Local Civil Rule 7.1(i), arguing that the Court overlooked the significance of a criminal complaint filed against him on November 13, 2024. D.E. 10 ("Motion" or "Mot."). Petitioner has also filed two "urgent" requests for a status update. D.Es. 11–12.[1] For the reasons below, the Court will **DENY** the Motion.

[1] On June 2, 2026, while the Motion was pending, Petitioner also petitioned the Third Circuit for a writ of mandamus directing this Court to grant the Motion or, in the alternative, to order his release. The Third Circuit denied the petition on July 16, 2026, without prejudice to renewal should this Court act without undue delay. *In re Gregorio-Meza*, No. 26-2388 (3d Cir. July 16, 2026) (per curiam). This Memorandum Order resolves the Motion and Petitioner's requests.

## I. BACKGROUND

Petitioner is serving an aggregated federal sentence arising from two separate cases in the Southern District of Florida. In criminal case No. 22-8019 ("*Gregorio I*"), Petitioner's supervised release was revoked on December 5, 2024, and he was committed to a term of one year and one day. Pet. at 24. In criminal case No. 24-80153 ("*Gregorio II*"), Petitioner was convicted of illegal reentry under 8 U.S.C. § 1326(a) and (b)(1), and on May 6, 2025, was sentenced to 21 months' imprisonment, to run "concurrent with the term imposed in [*Gregorio I*]." *Id.* at 27–28. Petitioner "receive[d] credit for all time served in this matter including from the date of arrest in connection with the warrant in this case." *Id.*

The underlying arrest history is undisputed. On October 31, 2024, Petitioner was apprehended by U.S. Immigration and Customs Enforcement ("ICE") and detained pending removal. *Id.* at 12. The Government's own declaration characterizes this arrest as occurring "on an outstanding immigration administrative warrant." D.E. 6-2, Declaration of Jon McEvoy[2] ("McEvoy Decl.") at 1–2. On November 8, 2024, a warrant issued in *Gregorio I* for violation of supervised release. *Id*. On November 13, 2024, a magistrate judge in the Southern District of Florida signed a criminal complaint charging Petitioner with illegal reentry, the offense underlying Gregorio II. *See* D.E. 6-3 ("SDFL Compl.").

The BOP aggregated Petitioner's two sentences under 18 U.S.C. § 3584(c), with the computation beginning December 5, 2024, the date the *Gregorio I* sentence commenced. McEvoy Decl. ¶ 8. The BOP awarded Petitioner 27 days of prior custody credit, running from November 8,

[2] Jon McEvoy is a Management Analyst at the BOP Designation and Sentence Computation Center. McEvoy Decl. ¶ 1. McEvoy audited Petitioner's sentence computation and determined it was correctly computed according to BOP policy and federal law. *Id.* ¶¶ 2–9.

2024 (the date the supervised release warrant issued) through December 4, 2024 (the day before the *Gregorio I* sentence began), but excluded October 31 through November 7, 2024, as time spent in civil ICE custody rather than "official detention" under 18 U.S.C. § 3585(b). Order at 9 (citing BOP Program Statement 5880.28). Based on the exclusion of civil detention, the BOP calculated a projected release date of September 19, 2026, rather than the April 28, 2026 date Petitioner calculated. *See* Pet. at 11, 26.

The Court's May 4, 2026, Order dismissed the Petition because Petitioner failed to exhaust his administrative remedies and, independently, failed on the merits because the BOP had properly excluded civil detention and correctly credited Petitioner for detention in *Gregorio I*. Order at 9. Petitioner now moves for reconsideration, arguing that the November 13, 2024 criminal complaint—rather than the November 8, 2024 supervised release warrant—marks the true commencement of his "official detention," and that the Court accordingly erred in accepting the BOP's distinction between civil and criminal custody. Mot. at 1–4.

## II. LEGAL STANDARD

A motion for reconsideration is governed by Local Civil Rule 7.1(i), which requires the movant to set forth "concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked." *Reeves v. Hudson Cnty. Jail Med. Dep't*, No. 09-2791, 2010 WL 3732999, at *1 (D.N.J. Sept. 17, 2010). To succeed on a motion for reconsideration, the party seeking reconsideration must show at least one of these grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration may not be used to relitigate matters already argued, nor to raise new arguments that could have been

raised before the original decision issued. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). Mere disagreement with the Court's decision is not a proper basis for reconsideration; it belongs in the ordinary appellate process. *Id.*

## III. ANALYSIS

The Motion fails for two independent reasons: (1) Petitioner does not challenge the Court's exhaustion holding, which alone supports dismissal; and (2) even setting exhaustion aside, Petitioner's merits arguments identify neither clear error nor manifest injustice in the Order.

### A. Petitioner Does Not Challenge the Court's Independent Exhaustion Holding

The Court's Order rested on two independent grounds: failure to exhaust administrative remedies and failure on the merits. Order at 9. Petitioner's Motion addresses only the merits ruling and does not identify any error—let alone clear error—in the Court's exhaustion determination. *See* Mot. Because the exhaustion holding independently supports dismissal, Petitioner's Motion cannot be granted relief even if his merits argument has force. *See* L. Civ. R. 7.1(i) (requiring the movant to identify the specific matters overlooked).

### B. Alternatively, Petitioner Has Not Shown Clear Error in the Court's Merits Ruling

Even if the exhaustion holding did not independently require denial, the Motion would fail on the merits. Petitioner identifies no intervening change in controlling law and no newly available evidence. *See* Mot. His Motion instead rests entirely on the third reconsideration ground discussed in *Max's Seafood*: the need to correct a clear error of law or fact or to prevent manifest injustice. Mot. at 1–2. The Motion fails for several reasons.

*First*, Petitioner's arrest date—which he claims is not the right date for calculation—was already part of the record when the Court decided the Petition. Order at 6–8. Petitioner therefore

identifies no overlooked factual matter; at most, he presses a new argument based on a fact already in the record. *See Bowers*, 130 F. Supp. 2d at 612.

*Second*, and more fundamentally, Petitioner's own theory undermines the relief he seeks. Petitioner now argues that the operative "Criminal Clock" began no earlier than November 13, 2024, the date the complaint was signed. Mot. at 1–2. But the BOP already credited Petitioner's custody from November 8, 2024—five days *earlier* than the date his Motion identifies as dispositive. Order at 9. A theory that would, if accepted, yield *less* credit than Petitioner already received cannot demonstrate that the Court's prior ruling—crediting Petitioner from November 8, 2024—was clearly erroneous.

*Third*, Rule 5(a) governs how quickly an arrested defendant must be brought before a magistrate judge. *See* Fed. R. Crim. P. 5(a)(1)(A). It does not, however, govern whether presentence custody qualifies as "official detention" under 18 U.S.C. § 3585(b). The Attorney General, through the BOP, computes that credit in the first instance. *United States v. Wilson*, 503 U.S. 329, 334–35 (1992). Petitioner cites no authority applying Rule 5(a) presentment principles to a § 3585(b) credit determination, and the Court is aware of none.

*Fourth*, the BOP's classification of Petitioner's ICE detention from October 31 through November 7, 2024, as civil custody is consistent with BOP Program Statement 5880.28. The Court addressed that policy in its Order, and Petitioner's own submissions acknowledge it. Order at 9; D.E. 7 ("Reply") at 7–8 (attaching Warden's Administrative Remedy Response explaining that "official detention does not include time spent in [ICE's] custody . . . pending a final determination of deportability" under 8 U.S.C. § 1252). Petitioner's Motion identifies no controlling authority that the Court overlooked in accepting that distinction.

*Fifth*, Petitioner asserts that it is inconsistent to classify October 31 through November 7, 2024, as civil detention while he was subject to an "active criminal arrest warrant." Mot. at 3. But no such warrant existed during that period; the supervised release warrant did not issue until November 8, 2024—the very date from which the BOP already credited Petitioner. Reply at 1–2.

Petitioner separately argues that because his October 31, 2024 arrest and his later illegal reentry charge involved the same underlying conduct, the entire period must be treated as a single span of "official detention." Mot. at 4. The BOP's computation, however, "utilizes the earliest date contained in the source documentation on which the inmate was charged" to determine whether a period of custody was civil or criminal. Reply at 7–8. Petitioner identifies no authority holding that a later criminal charge retroactively converts earlier civil immigration custody into "official detention" under § 3585(b). *See* Mot.

In sum, Petitioner has shown neither clear error nor manifest injustice, and reconsideration of the Court's merits holding is unwarranted.

## IV. CONCLUSION

For these reasons,

**IT IS,** on this 29th day of July, 2026,

**ORDERED** that Petitioner's Motion for Reconsideration, D.E. 10, is **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall serve a copy of this Memorandum Order upon Petitioner by regular U.S. Mail; and it is finally

**ORDERED** that the Clerk of Court shall mark this matter as **CLOSED.**

Evelyn Padin, U.S.D.J.